NOAH G. BLECHMAN (State Bar No. 197167)
Noah.Blechman@mcnamaralaw.com
JOHN J. SWAFFORD (State Bar No. 321174)
John.Swafford@McNamaraLaw.com
McNAMARA, AMBACHER, WHEELER,
HIRSIG & GRAY LLP
3480 Buskirk Avenue, Suite 250
Pleasant Hill, CA 94523
Telephone: (925) 939-5330
Facsimile: (925) 939-0203

Attorneys for Defendants
CITY OF PITTSBURG; BRIAN ADDINGTON;
WILLIAM HATCHER; CORY SMITH and
PATRICK WENTZ

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ASHTON PORTER, individually,

Plaintiffs,

vs.

CITY OF PITTSBURG, a municipal corporation; BRIAN ADDINGTON, in his individual capacity as a law enforcement officer for the PITTSBURG POLICE DEPARTMENT; ERNESTO MEJIA-OROZCO, in his individual capacity as a law enforcement officer for the PITTSBURG POLICE DEPARTMENT; WILLIAM HATCHER, in his individual capacity as a law enforcement officer for the PITTSBURG POLICE DEPARTMENT; CORY SMITH, in his individual capacity as a law enforcement officer for the PITTSBURG POLICE DEPARTMENT; and DOES 1-50, inclusive,

Defendants.

Case No. C24-03179 MMC

**DEFENDANTS' STATEMENT OF RECENT DECISION IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT, PER NDLR 7-3(d)(2)**

Date: October 16, 2026
Time: 9:00 A.M.
Dept: Courtroom 7-19th Floor
Judge: Hon. Judge Maxine M. Chesney


6657698

McNAMARA, AMBACHER, WHEELER, HIRSIG & GRAY LLP
ATTORNEYS AT LAW
3480 BUSKIRK AVENUE, SUITE 250, PLEASANT HILL, CA 94523
TELEPHONE: (925) 939-5330

## I. STATEMENT OF RECENT DECISION

On September 15, 2026, the Ninth Circuit issued a ruling in *Handy v. Jones*, 2026 U.S. App. LEXIS 28183 (9th Cir. September 15, 2026), in a deadly force case, finding the officers used deadly force in an objectively reasonable manner and/or are entitled to qualified immunity when facing a suspect wielding a shotgun. Defendants believe that this case supports their arguments on the pending dispositive motion. **Attached** is a copy of the opinion for the Court's reference, per Northern District Local Rule 7-3(d)(2).

The undersigned attests that concurrence in the filing of this document has been obtained from the signatory listed below, which shall serve in lieu of their signature on the document.

Dated: September 16, 2026

MCNAMARA, AMBACHER, WHEELER,
HIRSIG & GRAY LLP

By: /s/ Noah G. Blechman
Noah G. Blechman
John J. Swafford
Attorneys for Defendants
CITY OF PITTSBURG; BRIAN ADDINGTON; WILLIAM HATCHER; CORY SMITH and PATRICK WENTZ

Dated: September 16, 2026

CASTILLO, MORIARTY, ROBINSON, LLP

By: /s/ John R. Robinson
John B. Robinson
Attorneys for Defendant
ERNESTO MEJIA-OROZCO

# Handy v. Jones

United States Court of Appeals for the Ninth Circuit

August 10, 2026, Argued and Submitted, Anchorage, Alaska; September 15, 2026, Filed

No. 25-5105

**Reporter**
2026 U.S. App. LEXIS 28183 *; 2026 LX 529612

MONTE HANDY, Individually, and as Personal Representative of the ESTATE OF KRISTOPHER HANDY, On Behalf of the Estate and All Surviving Statutory Beneficiaries; ARDELL HANDY, individually; CACY GOULD, as next friend of, I.H., a Minor, A.H., a Minor, and M.H., a Minor, Plaintiffs - Appellees, v. JACOB JONES; JACOB OSTOLAZA; NOEL SENORAN; JAMES STINEMAN, Defendants - Appellants.

**Prior History:** **[*1]** Appeal from the United States District Court for the District of Alaska. D.C. No. 3:24-cv-00178-SLG. Sharon L. Gleason, Chief District Judge, Presiding.

**Disposition:** VACATED AND REMANDED.

## Syllabus

**SUMMARY***

**Qualified Immunity**

The panel vacated the district court's order denying qualified immunity to four Anchorage police officers (Defendants) and remanded, in an action brought by relatives of Kristopher Handy (Plaintiffs), alleging that Defendants used excessive force on Handy in violation of the Fourth Amendment and deprived them of their due process right to familial association.

Defendants, who were responding to a report of a domestic disturbance, announced their presence and directed Handy to come out of his apartment. Handy exited the apartment carrying a shotgun and refused instructions to put his hands in the air and drop his gun. Video of the incident confirms that as Handy walked toward Defendants in the parking lot, he waved his shotgun over his head and cursed at Defendants. As Handy stepped off the curb onto the parking area Defendants shot Handy nine times, killing him.

The panel held it had jurisdiction to consider this interlocutory appeal because an order denying qualified immunity is immediately appealable, and the court's jurisdiction is not affected by the fact that Defendants filed a motion to dismiss rather than a motion for summary judgment.

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Considering the **[*2]** applicable legal precedents and viewing the totality of the circumstances in the light most favorable to Plaintiffs, the panel held that Defendants were entitled to qualified immunity because they did not violate Plaintiffs' federal, statutory or constitutional rights.

The evidence before the district court reveals that Handy posed an immediate threat to Defendants and that Defendants acted reasonably in shooting him. First, Defendants reasonably believed that Handy may have committed a violent crime, where it was reported that he had assaulted his girlfriend, that he possessed a shotgun during the incident, and that Handy had earlier been waiting for Defendants' arrival armed with a shotgun. Second, a reasonable officer could think that Handy was resisting arrest when he refused to drop his weapon and instead waved it over his head and cursed when repeatedly instructed to drop the shotgun. Third, the evidence shows that Handy posed an immediate threat to Defendants' safety by waving his shotgun around as he continued to advance toward them.

The panel further held that even if Plaintiffs could make an initial showing of a violation of a constitutional right, Defendants would still be **[*3]** entitled to qualified immunity because the unlawfulness of their conduct was not clearly established.

Accordingly, the panel vacated the district court's order denying the motion to dismiss and remanded the matter to the district court with directions to enter an order granting Defendants qualified immunity.

**Counsel:** James P. Roberts (argued), Palmer Perlstein, Addison, Texas, for Plaintiffs-Appellees.

Joseph F. Busa (argued), Deputy Municipal Attorney, Solicitor General; Kate M. Buerer, Assistant Municipal Attorney; Eva R. Gardener, Municipal Attorney; Municipality of Anchorage, Municipal Attorney's Office, Anchorage, Alaska; for Defendants-Appellants.

**Judges:** Before: Consuelo M. Callahan, Carlos T. Bea, and Patrick J. Bumatay, Circuit Judges. Opinion by Judge Callahan.

**Opinion by:** Consuelo M. Callahan

## Opinion

CALLAHAN, Circuit Judge:

In the early hours of May 13, 2024, four Anchorage police officers (Defendants) shot Kristopher Handy as he advanced toward them holding a shotgun. Handy's relatives (Plaintiffs) filed this action alleging that the Defendants used excessive force on Handy in violation of the Fourth Amendment and deprived them of their due process right to familial association. Defendants filed a motion to dismiss asserting qualified immunity. The district **[*4]** court denied the motion, finding that it could not determine "that the amount of force used did not constitute a violation of the Fourth Amendment." Defendants have appealed.

We hold that we have jurisdiction to consider this interlocutory appeal and vacate and remand with directions to grant the Defendants qualified immunity. The facts alleged in the complaint show that Handy presented an immediate deadly threat to the officers and the Defendants' use of deadly force was not unconstitutionally excessive.

**I**

Late at night on May 13, 2024, Handy's neighbor called 911 multiple times to report a disturbance in Handy's apartment between Handy and his girlfriend. The neighbor reported that she heard the woman "screaming, [p]lease stop!" followed by "a loud thud against the wall," and later what sounded like "two shots in the house." The neighbor further told the dispatcher that Handy, appearing very agitated, was standing at the end of the driveway holding a shotgun "waiting for the cops to come around the corner." sThe complaint noted that this information was conveyed to the multiple officers who responded to the call.[1] They announced their presence and directed Handy to come out of the apartment. Handy exited **[*5]** the apartment carrying his shotgun. Officers instructed Handy multiple times to put his hands in the air and to drop his gun, but each time, Mr. Handy refused. The Video confirms that as he walked toward the Defendants in the parking lot, Handy waved his shotgun over his head and in response to being ordered to put his hands in the air responded, "fuck you." As Handy stepped off the curb onto the parking area Defendants shot Mr. Handy nine times, killing him.

**II**

In addressing Defendants' motion to dismiss, the district court noted that determining whether Defendants' actions were "objectively reasonable" requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake" and that "[o]nly information known to the officer at the time the conduct occurred is relevant." *S.R. Nehad v. Browder, 929 F.3d 1125, 1132 (**9th** **Cir**. 2019)*. The district court stated that in determining the importance of the government's interest in the force used, a court analyzes multiple factors including: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of **[*6]** the officers or others; and

(3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Estate of Lopez ex rel. Lopez v. Gelhaus, 871 F.3d 998, 1005 (**9th Cir**. 2017)* (cleaned up); *see also Nehad, 929 F.3d at 1132*. The district court also noted that "[w]hen officers respond to a domestic abuse call, they understand that violence may be lurking and explode with little warning." *United States v. Martinez, 406 F.3d 1160, 1164 (**9th Cir**. 2005)* (cleaned up).

---

[1] The Anchorage Police prepared and released videos of the incident in a document titled *Critical Incident Summary—Officer Involved Shooting—May 13, 2024* (the Video). The Video contained "not only the dash cam and body camera video footage but also the 911 calls, other videos, and commentary about the incidents by the Chief of Police and others." The Video may be found at http://www.youtube.com/watch?v=U9QAgFziCy8 [https://perma.cc/8JRM-K5GE].

Plaintiffs' complaint incorporated the video by reference. Incorporation-by-reference "is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (**9th Cir**. 2018)*. Where footage from body cameras worn by officers is incorporated into a complaint, a court views the facts in the light depicted by the videotape but construes any ambiguity in the video footage in the light most favorable to the plaintiff. *Mayfield v. City of Mesa, 131 F.4th 1100, 1104 (**9th Cir**. 2025)*.

Although the parties disagree as to how much of the Video was incorporated into the complaint, Defendants were informed prior to the shooting of the reports of Handy's actions and threats.

In denying the Defendants qualified immunity, the district court held that "[w]hen Mr. Handy came out of the apartment, he was no longer an immediate threat to the victim," and accordingly, "the need for the officers' use of deadly force based on the severity of the crime had largely dissipated." It noted that not all the officers fired their weapons. The district court observed that (1) Handy was not charging at the officers but walking at a "casual pace," (2) the neighbor never saw Handy raise his gun and never felt anyone was in imminent danger, and (3) the Ninth Circuit had held "that a reasonable fact-finder could conclude that officers were not in apparent danger when a suspect held a weapon at his or her side and did not make any threatening or aggressive action."[2]

The district court concluded that "[v]iewing the allegation in Plaintiffs' Complaint in the **[*7]** light most favorable to Plaintiffs, and drawing all reasonable inferences in their favor, the Complaint contains sufficient factual allegations that, if proven, could support a reasonable fact-finder's conclusion that Mr. Handy did not pose an immediate threat to the officers or others when Defendants used deadly force against Mr. Handy." In support of this determination, the district court commented first that because Handy was following the officer's order by exiting the apartment and was walking to the parking lot at a casual pace, viewed in the light most favorable to Plaintiffs, "these factual allegations if proven could lead a reasonable jury to find that Mr. Handy was not actively resisting or evading arrest." Second, the court reasoned that "the officers only warned Mr. Handy that the K-***9*** dog would be used if he did not exit his apartment; they did not warn him that deadly force would be used if he did not stop or drop the gun when ordered . . . [thus] a fact-finder could find the failure to provide a deadly force warning as some evidence of objective unreasonableness."

The district court cited three Ninth Circuit cases as supporting its determination that the Defendants' use **[*8]** of deadly force was not objectively reasonable, *George v. Morris, 736 F.3d 829 (**9th** **Cir**. 2013)*, *Lopez, 871 F.3d 998*, and *Nehad, 929 F.3d 1125*.

The district court described the situation in *George* as follows:

> Carol George called 911 in the early hours of the morning, reporting that her husband, Donald George, had a gun. Her husband wanted her to hang up, so she did. Deputies were dispatched to the residence for a domestic disturbance involving a firearm. Ms. George met them at the door and asked them to be quiet and not scare her husband. She told the officers that her husband was on the patio with his gun. Several officers went to the backyard. Mr. George emerged from the house onto a balcony over the backyard. One officer stated that when Mr. George came into the view, the gun was pointed down. Within 12 seconds of the deputies broadcasting that Mr. George had a gun, approximately nine shots were fired. Mr. George died later at the hospital.

The district court noted that the Ninth Circuit upheld the denial of summary judgment because "a reasonable fact-finder could conclude that the deputies' use of force was constitutionally excessive." *George, 736 F.3d at 838*. The district court quoted a passage from *George* stating, "law enforcement officials may not kill suspects who do not pose an immediate threat **[*9]** to their safety or to the safety of others simply because they are armed," however, it also noted that if "the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *Id.*

---

[2] The district court cited, *Hughes v. Kisela, 841 F.3d 1081, 1085-87 (**9th Cir**. 2016)*, *Hayes v. Cnty. of San Diego, 736 F.3d 1223, 1233-34 (**9th Cir**. 2013)*, and *Curnow ex rel. Curnow v. Ridgecrest Police, 952 F.2d 321, 324-25 (**9th Cir**. 1991)*.

The district court described the facts in *Lopez* as follows:

> [T]hirteen-year-old Andy Lopez was walking on a sidewalk in the middle of the afternoon and carrying a toy gun designed to replicate an AK-47. Officer Gelhaus had never seen a person walking on a street carrying an AK-47 in broad daylight and had confiscated toy guns on three previous occasions. While on patrol, Officer Gelhaus saw Andy walking at a normal pace on the street in the opposite direction with what he thought was an AK-47 pointed downward. He averred that he believed Andy was a teen and was not an individual associated with gangs in the area. Officer Gelhaus approached Andy, shouted to drop the gun, and as Andy turned, Officer Gelhaus shot Andy seven times.

The district court commented that the Ninth Circuit had affirmed the denial of summary judgment reasoning that a reasonable jury could find that the officer's use of deadly force was not objectively **[*10]** reasonable because "there was no threatening behavior on Andy's part and Andy did not point the weapon at the officer."

In *Nehad*, officers responded to a 911 call reporting a man making threats with a knife. *Nehad, 929 F.3d at 1130*. The district court described the facts, viewed in the light most favorable to Nehad, as:

> [Officer Browder] responded to a misdemeanor call, pulled his car into a well-lit alley with his high beam headlights shining into Nehad's face, never identified himself as a police officer, gave no commands or warnings, and then shot Nehad within a matter of seconds, even though Nehad was unarmed, had not said anything, was not threatening anyone, and posed little to no danger to Browder or anyone else.

The district court commented that the Ninth Circuit had concluded that even if the officer "had reasonably perceived Nehad as holding a knife, a reasonable factfinder could conclude that Nehad did not pose a danger to anyone." *Id. at 1134*.

When Defendants countered by citing *Napouk v. Las Vegas Metropolitan Police Department, 123 F.4th 906, 912 (**9th Cir**. 2024)*, a case where the Ninth Circuit expressly rejected the argument that an armed individual can pose a threat only when that person brandishes a weapon in a threatening manner, the district court dismissed *Napouk* as having been decided after **[*11]** the May 13, 2024, shooting in the present case.

**III**

An order denying qualified immunity is immediately appealable. *Hopson v. Alexander, 71 F.4th 692, 696-97 (**9th Cir**. 2023)*; *Scott v. Harris, 550 U.S. 372, 376 n.2 (2007)* ("Qualified immunity is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'") (quoting *Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)*).[3]

---

[3] Our jurisdiction is not affected by the fact that Defendants filed a motion to dismiss rather than a motion for summary judgment. The standard of review remains the same: whether considering the evidence in the light most favorable to Plaintiffs, their complaint, including the matters incorporated by reference, states "a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6)*. Moreover, *Fed. R. Civ. P. 12(d)* states:

We "decide de novo whether the facts, considered in the light most favorable to the plaintiff, show that qualified immunity is warranted," we "assume that the version of the material facts asserted by the plaintiff is correct," and we "may consider facts offered by the defendant that are 'uncontradicted by any evidence in the record.'" *Id. at 697* (cleaned up).

Officers are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby, 583 U.S. 48, 62-63 (2018)* (quoting *Reichle v. Howards, 566 U.S. 658, 664 (2012)*). Courts may use either prong as its **[*12]** starting point. *Pearson v. Callahan, 555 U.S. 223, 236 (2009)*.

"Clearly established" means "that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *Wesby, 583 U.S. at 63* (cleaned up). "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)*).

Where the intrusiveness of a seizure is by means of deadly force, the Supreme Court has focused on three factors for determining whether the government's interests "were sufficient to justify it": "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Napouk, 123 F.4th at 915* (quoting *Graham, 490 U.S. at 396*). "The 'most important' of these factors is 'whether the suspect posed an immediate threat to the safety of the officers or others.'" *Id.* (quoting *Lal v. California, 746 F.3d 1112, 1117 (**9th Cir**. 2014)*).

The district court misconstrued the applicable standard. The test is not whether a reasonable factfinder *could* find that Handy did not pose an immediate threat, but whether "it would be objectively reasonable for the officer to believe that the amount of force employed **[*13]** was required by the situation he confronted." *Napouk, 123 F.4th at 915* (*quoting* *Wilkins v. City of Oakland, 350 F.3d 949, 954 (**9th Cir**. 2003)*). The Supreme Court has noted that the "test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Graham v. Connor, 490 U.S. 386, 396 (1989)* (quoting *Bell v. Wolfish, 441 U.S. 520, 559 (1979)*). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Napouk, 123 F.4th at 915* (*quoting* *Graham, 490 U.S. at 396-97*). Thus, a determination of reasonableness on a motion to dismiss or for summary judgment does not mean that the officer could not have taken some other action.

In *Scott, 550 U.S. 372*, the Supreme Court considered the "existence in the record of a videotape capturing the events in question." *Id. at 378*. The Court recognized that at the summary judgment stage, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Id. at 380* (quoting *Fed. R. Civ. P. 56(c)*). However, where "the record taken as a whole could not

---

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Plaintiffs do not contend that they were denied such an opportunity, and we review the materials before the district court in the light most favorable to Plaintiffs.

lead a rational trier of fact to find for the nonmoving party, there **[*14]** is no 'genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)*). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* The Supreme Court concluded that the Eleventh Circuit "should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape." *Id. at 380-81*.

**IV**

Applying the three factors listed by the Supreme Court in *Graham, 490 U.S. at 396*, to the evidence before the district court—the assertions in the complaint and the camera footage—reveals that Handy posed an immediate threat to the officers and that the officers acted reasonably in shooting him. First, the Defendants reasonably believed that Handy may have committed a violent crime. It was reported that he had assaulted his girlfriend and that he possessed a shotgun during the incident. In addition, the Defendants had been informed that Handy had earlier been waiting for their arrival armed with a shotgun.

Second, although Handy had exited the apartment, he refused to drop his weapon, instead waving it over his head and cursing **[*15]** when repeatedly instructed to drop the shotgun. Thus, a reasonable officer could think that he was resisting arrest.

Third, and most importantly, the evidence, particularly the camera footage, shows that Handy "posed an immediate threat to the safety of the officers[.]" *Lal, 746, F.3d at 1117*. Defendants had been informed that Handy may have assaulted his girlfriend and had earlier been waiting for them armed with a shotgun. He was belligerently waving his shotgun around as he continued to advance toward the Defendants.

None of the factors cited by the district court reduced Handy's dangerousness. Although it appears that he did not point his shotgun at the officers as he stepped off the stairs, he could have instantly fired the shotgun from the hip. His exit from the apartment may have reduced the threat he posed to his girlfriend, but he continued to pose a serious threat to the officers as he advanced toward them. He may have been advancing at a "casual pace," but he remained armed, agitated, and capable of immediately firing at the Defendants. The fact that some officers did not fire does not mean that Handy did not pose an immediate threat. The undisputed evidence compels the conclusion that Handy posed **[*16]** an immediate threat to the officers.

None of the cases cited by the district court suggest otherwise. In *George, 736 F.3d 829*, the husband was not suspected of any crime, had not displayed any animosity to the police (indeed, may not have even been aware of the police presence), did not move toward the police, and never moved his weapon from its position by his side pointing down. He simply did not pose the type of immediate danger to the police that Handy posed to Defendants.

In *Lopez, 871 F.3d 998*, the minor was not suspected of any crime, was not advancing toward the officer, did not know of the officer's presence until the officer called out, and only turned to the officer in response to the officer's call. *Lopez* is not applicable to our situation where an armed adult, suspected of having committed a violent crime, advanced armed and in a belligerent manner towards officers.

*Nehad*, *929 F.3d 1125*, also does not support the district court's decision. There, the officer was responding to a misdemeanor call, knew that Nehad, if armed, was armed only with a knife, and shot Nehad before ascertaining whether he posed a threat to the officer or anyone else. In our case, the Defendants were responding to a domestic violence report, knew that Handy **[*17]** was armed with a shotgun, and had reasonably determined that he posed an immediate, serious threat. The three other cases cited by the district court are also factually distinct and do not support the assertion that an officer may not use deadly force against an armed suspect unless he makes a "threatening or aggressive action."

*Hughes, 841 F.3d 1081*, which was reversed by the Supreme Court, *584 U.S. 100 (2018)*, is inapposite as there the officer shot a suspect who was allegedly threatening another person with a knife.[4] Similarly, *Hayes, 736 F.3d 1223*, concerned an unfortunate event involving a knife.[5] While *Curnow, 952 F.2d 321*, concerned a suspect with a rifle, and recognized that whether a suspect points his gun an at officer is a relevant factor in determining the reasonableness of an officer's use of force,[6] neither it, nor any other case cited by the district court, suggests that an officer must wait to be targeted by a suspect before he or she can shoot in self-defense.

Rather, the Supreme Court in *Barnes v. Felix, 605 U.S. 73 (2025)*, rejected focusing on the "moment of threat . . . the circumstances existing at the precise time an officer perceived the threat inducing him to shoot," *id. at 76* in favor of an analysis of the "totality of the circumstances," which has no time limit. *Id. at 80*. The Court **[*18]** noted that "earlier facts and circumstances may bear on how a reasonable officer would have understood and responded to later ones." *Id.* In our case, the facts, specifically, that Handy was suspected of assaulting his girlfriend, had awaited the arrival of the officers armed with his shotgun, had refused orders to drop his weapon, was advancing toward the officers, was belligerent, and could fire the shotgun from his hip, constitute a "totality of the circumstances" that show that Handy was dangerous regardless of where his shotgun was pointed.

---

[4] In *Hughes, 841 F.3d 1081*, officers shot a woman, through a chain-link fence, who they had been informed had a mental illness and was perceived as threatening another woman with a large kitchen knife. *Id. at 1084*. In reversing the district court's grant of qualified immunity, we stressed that viewed most favorably for plaintiff, there were a number of disputed material facts: "whether Corporal Kisela was reasonable in believing that the kitchen knife was a weapon; whether he should have suspected mental health issues; whether the warning was sufficient; and most importantly, whether it was reasonable to believe that Ms. Hughes presented a threat to Ms. Chadwick's safety." *Id. at 1089*. Here, it is undisputed that Handy, belligerent and armed with a shotgun, continued to approach the Defendants.

[5] Responding to a domestic disturbance call around ***9***:00 pm, a deputy, after being told that the subject inside the house was potentially suicidal, entered the house and saw the subject in the kitchen, approximately eight feet away from him. *Id. at 1227-28*. The officer ordered the subject to show his hands, and when he did so, the subject revealed that he was holding a large knife. When the subject took one or two steps toward the deputy, the deputy shot him twice. *Id. at 1228*. We reversed the district court's grant of summary judgment holding that viewing the evidence in the light most favorable to the plaintiff, reasonable juries could conclude that the deputy's use of deadly force was not objectively reasonable. *Id. at 1232*. We noted that the subject had committed no crime, was not actively resisting arrest or attempting to evade arrest, and appeared to have been attempting to show his hands, as ordered, when he revealed the knife. *Id. at 1233*. There was no clear evidence that the subject was threatening the deputy and before entering the house, the deputy was "told that Hayes had threatened to harm himself; they were not told that he had threatened to harm others." *Id. at 1234*.

[6] Officers, looking through a window, believed that Curnow was assaulting a woman (Mercedes). *Id. at 323*. They forced their way into Curnow's home and shot Curnow when he picked up the weapon that was next to him. *Id.* Wounded, Curnow, carrying his rifle, ran into the kitchen and was exiting the house when an officer fired a second shot, killing him. *Id.* Mercedes, however, asserted "Curnow was not hitting her but was simply holding her in his lap," "Curnow did not reach for his gun before the police shot him," Curnow grabbed the unloaded gun by its muzzle, and "Curnow had been shot in the back by the first shot." *Id.* We affirmed the district court's denial of qualified immunity because "[u]nder [Merecedes's] version of the shooting, the police officers could not reasonably have believed the use of deadly force was lawful because Curnow did not point the gun at the officers and apparently was not facing them when they shot him the first time." *Id. at 325*.

We have used the totality of circumstances approach favored in *Barnes* in holding that an officer does not have to wait for a suspect to point a gun at him before shooting in self-defense. In *Napouk, 123 F.4th 906*, we affirmed the grant of qualified immunity to two police officers who shot Napouk when he came within nine feet of them armed with a machete or "slim jim." *Id. at 912*. In *Blanford v. Sacramento County, 406 F.3d 1110 (9th Cir. 2005)*, we affirmed a grant of qualified immunity to three officers who shot a suspect armed with a sword when he ignored warnings and commands and attempted to enter a home. *Id. at 112*. In neither case did the officers face an immediate threat such as that posed by Handy.

Our sister circuits agree that an armed belligerent **[*19]** suspect may pose an immediate threat even when the firearm is not pointed at an officer. *See* *Knibbs v. Momphard, 30 F.4th 200, 222 (4th Cir. 2022)* (stating that the circuit had "consistently held" that an officer does not have to wait until a gun is pointed at her before she can take action); *see also* *Estate of Rahim by Rahim v. Doe, 51 F.4th 402, 406 (1st Cir. 2022)* (armed suspect who refused to drop his weapon and advanced within twenty-five feet of the officers created a

"lethal threat"); *see also* *Garczynski v. Bradshaw, 573 F.3d 1158, 1169 (11th Cir. 2009)* ("Even if we assumed that Garczynski did not point his gun in the officers' direction, the fact that Garczynski did not comply with the officers' repeated commands to drop his gun justified the use of deadly force under these particular circumstances.").

In sum, considering the applicable legal precedents and viewing the totality of the circumstances (including the camera footage), in the light most favorable to Plaintiffs, Handy posed a lethal threat to Defendants and thus Defendants in shooting him did not violate Plaintiffs' federal, statutory or constitutional rights. *Wesby, 583 U.S. at 62-63*.

## V

Even if Plaintiffs could make an initial showing of a violation of a constitutional right, Defendants would still be entitled to qualified immunity under the second prong of the test for qualified immunity: "that the right was 'clearly **[*20]** established' at the time of the challenged conduct." *al-Kidd, 563 U.S. at 735* (citing *Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)*). Plaintiffs cannot show that existing law "placed the constitutionality of the [Defendants'] conduct beyond debate such that every reasonable official would understand that what he is doing is unlawful." *Wesby, 583 U.S. at 63* (citations omitted). None of the cases cited by the district court suggest that when facing an armed individual suspected of having committed a violent crime, an officer is required to hold his or her fire until and unless the individual actually aims the gun at the officer. Such a proposition was implicitly rejected by the Supreme Court in *Barnes, 605 U.S. 73*, and by us in *Napouk, 123 F.4th 906*, and *Blanford, 406 F.3d 1110*. As noted, the cases cited by the district court do not hold otherwise. Thus, even if we were to conclude that the Defendants misjudged Handy's dangerousness (which we do not), extant law does not place the constitutionality of their actions beyond debate.

## VI

As the district court noted, in *Graham, 490 U.S. at 396*, the Supreme Court held that "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a

careful balancing of 'the individual's Fourth Amendment interests against the countervailing governmental interests at skate.'" Moreover, "[t]he 'reasonableness' **[*21]** of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citations omitted). Here, the officers were informed that Handy may have committed a violent crime. Handy chose to disobey the officers' commands to drop his weapon and advanced on the officers cursing and waving his shotgun. His actions objectively posed an immediate danger to the Defendants such that they reasonably responded by shooting. Accordingly, viewing the evidence before the district court—the declaration and affidavits in Plaintiffs' complaint and the incorporated camera footage—in the light most favorable to Plaintiffs, Plaintiffs have not shown that Defendants violated "a federal statutory or constitutional right." *Wesby, 583 U.S. at 62-63*. Nor have Plaintiffs shown that applying controlling case law, the unlawfulness of the Defendants' conduct was "clearly established at the time." *Id. at 63*. Accordingly, the district court's order denying the motion to dismiss is vacated and the matter is remanded to the district court with directions to enter an order granting the Defendants qualified immunity.

**VACATED AND REMANDED**.

---

**End of Document**