United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

ASHTON PORTER, et al.,
Plaintiffs,
v.
CITY OF PITTSBURG, et al.,
Defendants.

Case No. 24-cv-03179-MMC (PHK)

**ORDER RESOLVING DISPUTE RE DRAFT EXPERT REPORT**

Re: Dkt. 84

All discovery matters in this case have been referred to the undersigned. [Dkt. 37]. Pending before the Court is a Joint Discovery Letter Brief regarding whether records prepared by Plaintiff's retained orthopedic expert are subject to disclosure. *See* Dkt. 84. Plaintiff previously produced a partially redacted version of the records following the expert's deposition. *Id.* at 1. Defendants now seek production of the records with all redactions removed except for a narrow category of redactions for personal identifying information. *Id.* Having reviewed the Parties' submissions (including conducting *in camera* review of the documents at issue, both with and without the redactions in order to be able to understand what was redacted) the Court finds this dispute suitable for resolution without oral argument. *See* Civil L.R. 7-1(b).

**LEGAL STANDARD**

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See*

*Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The relevant legal standards for discovery are well-known. Rule 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake

in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

With regard to proportionality, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (*citing Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

**DISCUSSION**

The instant dispute concerns whether the five pages of records prepared by Plaintiff's retained orthopedic expert following an in-person examination of Plaintiff constitute a draft of that expert's report (which Plaintiff argues would not be discoverable) or constitute examination notes (which Defendant argues would be discoverable). [Dkt. 84 at 1]. Plaintiff has already produced a partially redacted version of the records, but Defendants seek production of the records with all such redactions removed, with the exception of a narrow category of redactions to shield personally identifying information. As requested by both Parties, the Court conducted an *in camera* review of the records to aid in resolution of the instant dispute (copies of both the redacted and unredacted versions were provided, along with the expert's final produced expert report, so that the Court could see exactly what was redacted and compare the redacted materials to the final expert report). [Dkt. 84 at 3, 5]. *In camera* review is appropriate here in order for the Court to determine whether the redacted materials contain facts or data which were considered by the expert in forming their opinions or if the notes reflect attorney-expert communications. *See, e.g.*, *Farrell v. U.S. Olympic & Paralympic Comm'ee*, 2023 WL 9063637, at *6 (N.D.N.Y. Nov. 8, 2023) (ordering *in camera* review of expert's Excel spreadsheet with notes, to determine whether or not notes are protected under Rule 26(b)(4)(B) or (b)(4)(c)).

A party must disclose the identity and the written report of an expert whose testimony may be used at trial. *See* Fed. R. Civ. P. 26(a)(2)(A)–(B). Among other things, the report must contain the expert's opinions and the facts or data the expert considered in forming the opinions. *Republic of Ecuador v. Mackay*, 742 F.3d 860, 866 (9th Cir. 2014). Rule 26 does, however, provide some limitations regarding disclosure of certain expert materials. *Id*. Draft reports and attorney-expert communications are generally protected from disclosure "regardless of the form in which the draft is recorded." *Republic of Ecuador*, 742 F.3d at 867 (citing Fed. R. Civ. P. 26(b)(4)(B)); *see also Rice v. City & Cnty. of S.F.,* No. 19-cv-04250-LB, 2023 U.S. Dist. LEXIS 37333, at *3 (N.D. Cal. Mar. 3, 2023) ("Drafts of expert reports generally are protected."). "The case law, somewhat surprisingly, provides little guidance when it comes to determining whether an expert's report was a draft or final version." *Cnty. of Maricopa v. Office Depot Inc.*, No. CV-14-01372-PHX-DWL,

United States District Court
Northern District of California

2019 WL 5066808, at *25 (D. Ariz. Oct. 9, 2019) (collecting cases).

The impetus for work product protections for expert draft reports derives from the protections for attorney work product. As the Ninth Circuit has made clear, "the driving purpose of the 2010 amendments [to Rule 26] was to protect opinion work product—i.e., attorney mental impressions, conclusions, opinions, or legal theories—from discovery. The protections for draft reports and attorney-expert communications were targeted at the areas most vulnerable to the disclosure of opinion work product." *Republic of Ecuador*, 742 F.3d at 870. After reviewing the development of the amendments to Rule 26, the Ninth Circuit concluded that "[t]here is no indication that the [Rules Advisory] Committee intended to expand Rule 26(b)(3)'s protection for trial preparation materials to encompass all materials furnished to or provided by testifying experts, which would unfairly hamper an adverse party's ability to prepare for cross-examination and rebuttal…. We conclude that Rule 26(b)(3) does not provide presumptive protection for all testifying expert materials as trial preparation materials." *Id.* at 871 (citation omitted).

Here, Defendants argue that the records are discoverable because they reflect what Plaintiff reported and what the Plaintiff's expert witness (a doctor) "observed, examined, recorded, assessed, and considered in forming his opinions." [Dkt. 84 at 2]. Plaintiff counters that the redacted portions of the records constitute a draft report that is privileged from disclosure as work-product. [Dkt. 84 at 4]. As Plaintiff notes in briefing, the structure of the redacted report is "virtually identical" to the expert's final report, which was produced in discovery. Plaintiff argues that this "supports the conclusion that the document was a draft that [the expert] anticipated would form his final report." [Dkt. 84 at 5].

It is evident in light of the Court's *in camera* review that portions of the redacted records are discoverable. Labelling a document as a draft or not is not dispositive, especially here where portions of the materials were produced unredacted and portions were redacted – what matters in a case such as the instant case is not the label applied to the whole document but rather the nature of the redacted materials. *Deangelis v. Corzine*, 2016 WL 93862, at *3 n.5 (S.D.N.Y. Jan. 7, 2016) ("the suggestion that a non-privileged document attains privileged status under Rule 26(b)(4)(B) simply by including the word 'draft' in the electronic file name is nonsense. It is the substance of

United States District Court
Northern District of California

the document and the circumstances of its creation, not its label, that dictate whether it is, in fact, a draft."). That is, the portions of a document which contain facts and data that the expert considered in forming his opinion are not protected under Rule 26(b). *Rice,* 2023 U.S. Dist. LEXIS 37333, at *3. Some of the redacted portions here are facts which the expert took note of and thus appear to have been considered in forming his opinion. Indeed, the "virtually identical" structural organization of the two documents (the redacted version and the final report produced) indicates also that the expert considered at least some of the redacted portions to form his opinion in the final report. *See, e.g., Meghinasso v. Mercedes-Benz USA LLC*, No. C17-5930 RAJ, 2021 LX 97695, at *5 (W.D. Wash. May 20, 2021) (explaining that if the expert "did not make any changes [from the draft report] before submitting the final report, he necessarily would have considered or relied upon the information provided by counsel.").

Furthermore, much of the redacted information is repeated or copied word for word in the expert's final report. Here, the text which appears identically both in the redacted portions of the disputed materials and in the final, produced expert report reflect facts which the expert facially relied upon in forming his opinions. As such, "[c]ounsel cannot argue that [the expert] did not consider the facts or data… when this information is contained in the final report." *Ross v. City of Rockford*, No. 15 CV 50064, 2018 U.S. Dist. LEXIS 51398, at *10 (N.D. Ill. Mar. 27, 2018). Any information that was incorporated verbatim into the final report means the expert, by definition, "considered" or "relied upon" the facts contained in the redacted portion, rendering it discoverable. *Id; see also Republic of Ecuador*, 742 F.3d at 870 (citing Fed. R. Civ. P. 26(a)(2)(B) advisory committee's notes (2010 Amendments) ("materials containing 'factual ingredients' are discoverable")). Furthermore, to the extent text was copied exactly from the document into the final expert report means that, by definition, that text was already produced and discoverable for the very reason that it is a portion of the produced final expert report. It appears incongruous to take the position that the exact same text must be disclosed in one document but must not be discoverable in another document – the factors underlying the protections for draft reports in Rule 26 are not implicated for that very same text, since such text would not reflect attorney work product or undiscoverable attorney-expert communications.

United States District Court
Northern District of California

The Court is cognizant that, under different factual circumstances, other courts have held that "notes" or other portions of an expert's report which were incorporated from a draft into a final report were not discoverable. *See, e.g.*, *Cnty. of Maricopa*, 2019 WL 506688, at *25 (citations omitted) ("Some of the factors that courts have considered when determining whether documents constitute a draft report include 'whether the documents were created for the purpose of being included in the final report, and whether they were actually included in earlier versions of the report.' Courts have also concluded that '[a]n expert's notes setting out in detail the content and structure of her report, or even just a section of her report, could properly be shielded from disclosure by Rule 26(b)(4)(B).'") (citations omitted); *see also Farrell*, 2023 WL 9063637 at *7 (ordering that expert notes that were directly incorporated into the expert report are not discoverable as drafts, but holding that notes that are not directly incorporated into the expert report are to be disclosed). However, these cases are distinguishable because the protected portions were not information or data relied upon by the expert in forming their opinions, unlike the portions of the document at issue here. Further, those cases discuss "incorporating" the notes or other documents into the expert's report but appear to include some amount of editing (and thus changes which would reflect a draft expert report), as opposed to rote verbatim copying of text as in the situation here.

As noted above, the Court has been careful to make clear that ***some*** of the redacted portions of the document at issue reflect facts relied upon by the doctor here, and for those reasons, should be unredacted and produced. The corollary is that, based on the Court's *in camera* review, ***other*** redacted portions of the materials here are clearly drafts of the expert's report and are thus protected from disclosure under Rule 26. *See Republic of Ecuador*, 280 F.R.D. at 512 (holding that draft worksheets created by the expert for use in his expert reports are protected from discovery under Rule 26). That is, without revealing the details of these categories of redactions (because they should retain their protected status), after its review, the Court finds that some of these redacted portions do, in fact, constitute text comprising earlier drafts of the expert's report.

In light of the above, and in light of the Court's *in camera* review, the Court will send a marked up version of the materials at issue to counsel for Plaintiff with instructions to unredact those portions which were previously redacted (for those portions the Court concludes are

discoverable for the reasons discussed herein) and instructions to allow Plaintiff to maintain other redactions (for those portions the Court concludes are not discoverable for the reasons discussed herein). Plaintiff is **ORDERED** to lodge a revised redacted version of the document at issue with the Court at PHKpo@cand.uscourts.gov which complies with the Court's directives on what to unredact and what redactions to maintain, within five (5) business days of the date of this Order. If the Court finds that Plaintiff's revised redactions do not fully comply with or implement the changes to redactions and unredactions as ordered herein, the Court will further instruct Plaintiff on any further corrections in order to finalize the revised redacted version. Assuming the revised redacted version is finalized promptly, Plaintiff is also **ORDERED** to serve that revised redacted version of the materials at issue to counsel for Defendants within seven (7) business days of this Order and to file a Notice of compliance with this Order within that same deadline (or by whatever other deadline set by any later Court Order).

## CONCLUSION

For the reasons set forth herein, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the Parties' Joint Discovery Letter Brief. The Court **FINDS** that only portions of the redacted records have been sufficiently shown to be subject to disclosure because they reflect facts relied upon by the expert in forming his opinions, while other redacted portions shall remain redacted because those portions are drafts of the expert report.

This Order **RESOLVES** Dkt. 84.

**IT IS SO ORDERED.**

Dated: October 2, 2026

PETER H. KANG
United States Magistrate Judge